UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SHARONNE JOHNSON** | * | **CIVIL ACTION NO. 6:15-cv-01862** |
| **VERSUS** | * | **CHIEF JUDGE DEE D. DRELL** |
| **JOWIN EXPRESS, INC.,** | * | **MAG. JUDGE PATRICK J. HANNA** |
| **CHEROKEE INSURANCE COMPANY** | | |
| **AND LARRY DRUMMOR** | * | **LAFAYETTE DIVISION** |

**************************************************************************

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL NEUROPSYCHOLOGICAL TESTING BY KEVIN BIANCHINI, PH.D., NEUROPSYCHOLOGIST**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Sharonne Johnson, who submits the instant Memorandum in Opposition to Defendants' Motion to Compel Neuropsychological Examination.

I.     STATEMENT OF FACTS

By way of background, on December 9, 2014, Plaintiff, Sharonne Johnson, a then 34-year-old certified nursing assistant, was the unfortunate victim of a high-speed collision with an 18-wheeler, which occurred at the intersection of Interstate 49 and U.S. Highway 190.  As a result of the collision, Ms. Johnson suffered multiple permanent, life-altering injuries, including a traumatic brain injury.

The issue before this Court arises out of Defendants' unreasonable request to submit Ms. Johnson to thirteen (13) hours of additional neuropsychological testing to be administered over the course of two (2) days by Defendants' chosen expert in neuropsychology, Kevin Bianchini, Ph.D.  Significantly, Ms. Johnson has already undergone extensive neuropsychological testing performed by board certified clinical psychologist and neuropsychologist, Eric Cerwonka, Psy.D.

Over the past year, Ms. Johnson underwent approximately twenty-five (25) hours of neuropsychological testing, the most recent of which occurred on April 30, 2016.[1] Dr. Cerwonka's testing included both a standardized battery and an individualized battery based on Ms. Johnson's clinical presentation.[2] To date, Ms. Johnson has undergone a total of thirty-nine (39) neuropsychological tests, subtests, and/or interviews, including the following:

> Clinical Interview, Chart/Record Review, Modified Mini-Mental State Examination (3MS), Dementia Rating Scale-Second Edition (DRS-2), Wechsler Memory Scale-Fourth Edition (WMS-IV) Logical Memory Subtests I & II, WMS-IV Logical Memory Recognition Subtest, WMS-IV Visual Reproduction Subtests I & II, Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) Block Design Subtest, WAIS-IV Similarities Subtest, WAIS-IV Digit Span Subtest, WAIS-IV Matrix Reasoning Subtest, WAIS-IV Vocabulary Subtest, WAIS-IV Arithmetic Subtest, WAIS-IV Symbol Search Subtest, WAIS-IV Visual Puzzles Subtest, WAIS-IV Information Subtest, WAIS-IV Coding Subtest, WAIS-IV Letter-Number Sequencing Subtest, WAIS-IV Figure Weights Subtest, WAIS-IV Picture Completion Subtest, WAIS-IV Cancellation Subtest, California Verbal Learning Test-Second Edition (CVLT-II), Trail-Making Test (TMT) Parts A & B, Wisconsin Card Sort Test (WCST), Rey 15-Item Memorization and Recognition Test, Rey Complex Figure Test and Recognition Trial (RCFT), Test of Memory Malingering (TOMM), North American Reading Test-Revised (NART-R), Conner's Continuous Performance Test-Third Edition (CPT-3), Stroop Neuropsychological Screening Test (Stroop), Symbol-Digit Modalities Test (SDMT), Color Trails Test (CTT) 1 & 2, Delis-Kaplan Executive Function System (D-KEFS) Trail Making Test, D-KEFS Verbal Fluency Test, D-KEFS Design Fluency Test, D-KEFS Color-Word Interference Test, D-KEFS Tower Test.[3]

Ms. Johnson's test results and raw data were reviewed by her treating neuropsychologist, Eric Cerwonka, Psy.D.[4]

As a result of Ms. Johnson's treatment with Dr. Cerwonka, Defendants retained their own expert neuropsychologist, Dr. Bianchini. Plaintiffs have no objection to Defendants' desire to elicit an expert opinion from Dr. Bianchini in defense of their case. Plaintiffs also have no

---

[1] *See* Exhibit "A" - Affidavit of Eric R. Cerwonka, Psy.D.
[2] *Id.*
[3] *Id.*
[4] *Id.*

objection to Defendants securing the raw data and testing results from Ms. Johnson's prior neuropsychological testing. In fact, the raw data and objective testing results are readily available to Defendants and can be provided to Defendants' expert, Dr. Bianchini, for his review, analysis, and interpretation.

Despite this fact, Defendants have insisted that Ms. Johnson undergo an *additional* and duplicative battery of standard neuropsychological testing under Rule 35 of the Federal Rules of Civil Procedure. Defendants have not provided any explanation as to why Dr. Bianchini cannot simply rely on the existing testing results and raw data to form his expert opinion as did Dr. Cerwonka, yet they have unreasonably demanded thirteen (13) hours of additional and unspecified neuropsychological testing.

In addition, Defendants have refused to identify the specific neuropsychological tests that Dr. Bianchini seeks to administer to Ms. Johnson. Given that Ms. Johnson was previously administered a standard battery of tests widely used in the field of neuropsychology and an individualized battery based on Ms. Johnson's individualized needs, it is highly likely that she has already taken most, if not all, of the tests Dr. Bianchini intends to administer. Without a listing of Dr. Bianchini's specific tests, there is no way of knowing which tests would be duplicative. Plaintiff opposes Defendants' request for such burdensome and unnecessarily repetitive neuropsychological testing.

## II. LAW AND ARGUMENT

Plaintiff opposes Defendants' unreasonable request for additional neuropsychological testing for the following reasons:

1) Defendants failed to show "good cause" for the neuropsychological testing, as there are far less burdensome means by which Defendants may obtain a neuropsychological opinion in defense of their case.

    2)    By refusing to disclose the specific neuropsychological tests to be administered by Dr. Bianchini, Defendants failed to specify the "manner, conditions, and scope of the examination" under Rule 35.

Given each of these reasons, which are discussed in more detail below, Defendants' request for additional neuropsychological testing under Rule 35 should be denied.

### A. Standard of Review

Trial courts are vested with broad discretion to regulate pre-trial discovery.[5] Louisiana district courts have similarly ruled that the trial court's wide discretion extends to determinations of whether an examination should be ordered under Fed. R. Civ. P. 35.[6]

### B. Rule 35 of the Federal Rules of Civil Procedure

Fed. R. Civ. P. 35 allows a party to request what is commonly referred to as an independent medical examination (IME). In a case where the plaintiff has alleged physical injuries and/or mental distress, a defendant may request under Rule 35 that the plaintiff submit to an IME with an expert of defendant's choosing. Rule 35(a) states as follows:

> (1) The court where the action is pending **may** order a party whose mental or physical condition–including blood group–is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.
>
> (2) The order **may** be made **only on motion for good cause** and on notice to all parties and the person to be examined; and **must specify the time, place, manner, conditions, and scope of the examination**, as well as the person or persons who will perform it.[7]

---

[5] *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1103 (5th Cir. 1981).
[6] *Coca-Cola Bottling v. Torres*, 255 F.2d 149 (5th Cir. 1958); *Sparling v. Ranger Offshore, Inc.*, Civil Action No. 11-CV-2204, 2013 WL 3894163, at *1 (W.D. La. July 25, 2013); *Glaze v. Bud's Boat Rental, Inc.*, No. CIV. A. 93-1334, 1993 WL 441890, at *1 (E.D. La. Oct. 21, 1993), *aff'd* 68 F.3d 472 (5th Cir. 1995).
[7] Fed. R. Civ. P. 35(a).

Rule 35 does not grant a defendant an absolute right to subject an injured plaintiff to an IME. The district court "may" order an IME only where (1) the physical or mental condition of the party sought to be examined is in controversy, and (2) good cause exists for requiring the party to submit to the examination.[8]

In this case, Plaintiff does not contest that Ms. Johnson's mental and physical condition is "in controversy." Plaintiff, however, submits that Defendants have failed to show "good cause" under Rule 35; and that Defendants have failed to sufficiently specify "the manner, conditions, and scope" of the proposed examinations. Under these circumstances, Rule 35 does not permit the additional battery of neuropsychological testing Defendants have requested.

    **C.    Defendants Failed to Establish "Good Cause" for Additional and Repetitive Neuropsychological Testing**

There is no "good cause" for Defendants' requested battery of neuropsychological testing. Defendants may secure a neuropsychological opinion from their chosen expert, Dr. Bianchini, by utilizing substantially less burdensome discovery methods other than their requested IME under Rule 35. Specifically, Dr. Bianchini may review, analyze, and interpret Ms. Johnson's existing neuropsychological testing results and corresponding raw data in order to form an expert opinion for Defendants.

Rule 35 imposes on the moving party the heightened test of establishing "good cause" for a proposed examination.[9] The availability of less burdensome discovery devices is relevant to determining whether good cause exists for granting an IME. For example, the United States Fifth Circuit Court of Appeal, in *Acosta v. Tenneco Oil Co.*, 913 F.2d 205, 209 (5th Cir. 1990), denied a defense expert vocational rehabilitation IME on the grounds that less intrusive

---

[8] *Schlagenhauf v. Holder*, 379 U.S. 104, 117–18, *119, 85 S. Ct. 234, 243, 13 L.Ed.2d 152 (1964); *see also Grossie v. Florida Marine Transporters, Inc.*, 2006 WL 2547047, *2 (W.D. La. August 31, 2006).
[9] *Grossie*, 2006 WL 2547047 at *2.

discovery methods were readily available. The court reasoned that the defendants had failed to establish good cause because the plaintiff had supplied defendants with their vocational rehabilitation expert's report, testing results, deposition testimony, and written discovery.[10] The Fifth Circuit accordingly ruled that "Tenneco already has the information it seeks to pursue its mitigation claim without a repetitive examination of its own."[11]

Indeed, the Louisiana Supreme Court[12] and numerous federal courts throughout the country[13] have similarly ruled that alternative discovery methods must be considered before establishing good cause to subject an injured plaintiff to an IME.

Accordingly, Plaintiff submits that the applicable jurisprudence demonstrates that an IME should be properly denied for lack of good cause under Rule 35 where alternative discovery measures may be effectively utilized. In this case, Defendants have failed to show "good cause" under Rule 35 because substantially less burdensome discovery methods are available to

---

[10] *Id.*

[11] *Id.*

[12] *See Williams v. Smith*, 576 So.2d 448, 452 (La. 1991) (holding that the defendants failed to establish good cause for an IME specifically where there were "other discovery methods available" to the defendants).

[13] *See, e.g.*, *Storms v. Lowe's Home Centers, Inc.*, 211 F.R.D. 296, 298 (W.D. Va. 2002) (No good cause where plaintiff provided defendant with a copy of all medical records, a copy of the report from his vocational expert, his tax records, and all other discoverable material requested by defendant, and could be deposed on all matters relating to his functional capacity.); *Yarosevich v. Toyota Indus. Corp.,* No. CIV. 05-CV-182-JD, 2008 WL 2329331, at *1-2 (D.N.H. June 5, 2008) ("In short, the vocational expert appears to have all the material he needs (assuming defense counsel has done his job in discovery). Plaintiff has provided her health history, the employment history requested and her medical records. Defendant has not therefore shown any cause, let alone good cause for a Rule 35 exam. The expert can review the records and make his assessment without the necessity of an unsupervised deposition."); *see Hill ex rel. Hill v. McNairy County Bd. of Educ., 229 F.R.D. 563, 568* (W.D. Tenn. E.D. 2004) (Holding that "good cause" requires a showing of specific facts that demonstrate the need for the information sought, and lack of means for obtaining it elsewhere.); *see Caban ex rel. Crespo v. 600 E. 21st St. Co.*, 200 F.R.D. 176, 182 n.17 (E.D.N.Y. 2001) (Good cause did not exist to order psychological examination where other evidence of mother's academic performance was available.).

Defendants in comparison to Defendants' request for an additional thirteen (13) hours of neuropsychological testing over two (2) days.

Specifically, Defendants have access to the raw data and testing results from the extensive neuropsychological tests already taken by Ms. Johnson.[14] Moreover, as Defendants are well aware, Plaintiff's treating neuropsychologist, Dr. Cerwonka, reviewed and interpreted the raw data from this prior testing to form his expert opinion as to Ms. Johnson's neuropsychological condition. Defendants' expert, Dr. Bianchini, can do the same. Like Dr. Cerwonka, Dr. Bianchini can similarly review, analyze, and rely on Ms. Johnson's raw data and testing results in forming his expert opinion. By allowing Dr. Bianchini to rely on Ms. Johnson's existing neuropsychological testing raw data, Defendants may secure an expert neuropsychological opinion by less burdensome means than compelling Ms. Johnson to undergo additional and repetitive neuropsychological testing.

Moreover, via discovery, Defendants already possess numerous other items to aid Dr. Bianchini in forming his expert opinion in neuropsychology. Specifically, Defendants are in possession of Ms. Johnson's medical records and her deposition testimony regarding her neuropsychological condition.[15] Once Dr. Cerwonka's report and raw data are made available, Defendants will be in possession of this information as well. Thus, Defendants are equally capable of providing this additional information to their expert, Dr. Bianchini, to secure an opinion in neuropsychology in lieu of the proposed additional two-day battery of what is likely to be the same standard battery of neuropsychological testing Ms. Johnson has already undergone.

---

[14] As previously discussed, Ms. Johnson has already submitted to thirty-nine (39) hours of neuropsychological testing on multiple occasions. *See* Exhibit "A" - Affidavit of Eric R. Cerwonka, Psy.D.

[15] Ms. Johnson's deposition was taken on November 20, 2015.

7

Finally, Dr. Cerwonka, Ms. Johnson's treating neuropsychologist, has indicated that additional neuropsychological testing is contraindicated at this point because she has recently undergone standard and individualized batteries of neuropsychological testing.[16] Extensive research has documented that a patient who is retested with the exact or similar tests or subtests after undergoing neuropsychological testing will predictably perform better on the second round of testing because those patients have already been exposed to those or similar tests.[17] In this instance, additional testing would likely produce skewed results.[18] Thus, the risk of additional testing far outweighs any potential benefit derived from such testing in Ms. Johnson's case.[19]

Accordingly, the record reflects that Defendants have access to significantly less burdensome discovery devices to secure an expert opinion in neuropsychology from Dr. Bianchini. Dr. Bianchini, like Dr. Cerwonka, can similarly review, analyze, and rely on the prior neuropsychological testing raw data in forming his expert opinion, as well as the other medical evidence Plaintiff provided to Defendants. Therefore, Defendants have failed to establish "good cause" to subject Ms. Johnson to unnecessarily repetitive and overly burdensome neuropsychological testing.

### D. Defendants Failed to Satisfy the Manner, Conditions, and Scope of the Examination by Refusing to Disclose the Specific Neuropsychological Tests to be Administered by Dr. Bianchini

Defendants have refused to name and identify the specific neuropsychological tests sought to be administered by their chosen neuropsychologist, Dr. Bianchini. In refusing to disclose the neuropsychological testing at issue, Defendants failed to satisfy Rule 35's express

---

[16] *See* Exhibit "A" – Affidavit of Eric R. Cerwonka, Psy.D.
[17] *Id.*
[18] *Id.*
[19] *Id.*

8

requirement that the moving party "**shall specify** the time, place, **manner, conditions, and scope** of the examination" (emphasis added).

Defendants cite only to one case—*Daigle v. Nabors Drilling USA, LP*, Civil Action No. 05-0336 2007 WL 580781 (W.D. La. 2007)—for the proposition that they are not required to identify the specific tests Dr. Bianchini intends to administer to Ms. Johnson under the "manner, conditions, and scope" requirements of Rule 35.  Defendants' reliance on *Daigle* is improper, as there is an important factual distinction between *Daigle* and the instant case.  In *Daigle*, the plaintiff had undergone no neuropsychological testing prior to the defendant's request for an IME.[20]  Given the lack of prior testing, the Court permitted a "standard" battery of neuropsychological testing to be administered to the plaintiff because the plaintiff had placed his neuropsychological condition in controversy, and thus determined that disclosing the specific tests to be administered within that standard battery was unnecessary.[21]

In this instance, however, **Ms. Johnson has already submitted to a standard battery and an individualized battery of neuropsychological testing** by a licensed clinical psychologist and neuropsychologist.  Thus, a listing of the tests Dr. Bianchini is needed to determine which tests Ms. Johnson has already taken so as not to subject her to unnecessarily duplicative testing.  Refusing to require Defendants to disclose the specific tests he intends to administer precludes Ms. Johnson from objecting to certain tests as duplicative, unreliable, or irrelevant.

In addition, there is significant persuasive authority on point in Louisiana under La. Code Civ. Proc. art. 1464—the state law equivalent to Rule 35—supporting that a defendant must identify the particular tests to be administered in order to sufficiently comply with the

---

[20] *Id.* at 1.
[21] *Id.* at 2.

"manner, conditions, and scope of the examination." For example, in *Williamson v. Haynes Best Western of Alexandria*, 595 So.2d 1201, 1204 (La. App. 4 Cir. 1992), the Louisiana Fourth Circuit denied the defendants' requested IME because the defendants failed to specify the specific tests at issue.[22] The court ruled that even if the defendants were able to establish "good cause" for the proposed testing, the defendants were not entitled to an IME because they failed to specify the "scope" of the proposed examination.[23] The court reasoned that "[A]rt. 1464 also requires that the moving party specify the 'scope' of the proposed examination, which the defendant in this case has failed to do. **Best Western does not specify what tests plaintiff has received or which tests are necessary to defend the case**."[24]

Similarly, in *Alguas v. Halbert*, 378 So.2d 192, 193 (La. App. 4 Cir. 1979), the Fourth Circuit denied the requested IME where the defendants failed to sufficiently specify the proposed examination under Article 1464. In denying the request, the court noted that "the request in the present case is vaguely worded."[25] The court reasoned that:

> Requests under this article **must specify in detail the character and extent of the examination…the details of the requested examination are necessary** to enable the trial judge to fix limitations on the extent of the examination or to determine the availability of other alternatives. Thus, **the lack of specificity in the request in the present case alone justifies denial** of the request."[26]

In sum, the applicable Louisiana jurisprudence demonstrates that defendants must disclose the details of any proposed examination under Article 1464, including the specific tests sought to be administered to the plaintiff. Plaintiff urges the Court to consider this persuasive authority in analyzing the defendants' duty under the "manner, scope, and conditions" requirement of Rule 35 in the instant case.

---

[22] *See* Exhibit "A" – Affidavit of Eric R. Cerwonka, Psy.D.
[23] *Id.*
[24] *Id.* (emphasis added).
[25] *Id.* at 193.
[26] *Id.* (emphasis added).

Here, the record reflects that Defendants refused to identify any of the specific examinations comprising the thirteen (13) hour-long battery of neuropsychological testing sought to be imposed on Ms. Johnson over two (2) days. *Williamson* and *Alguas* instruct that Defendants must identify the specific examinations under Article 1464. By refusing to disclose this basic information, Defendants herein have similarly failed to satisfy the requirement under Rule 35 that the moving party "shall" specify the manner, conditions, and scope of the examination.

Moreover, the policy considerations underlying the rulings in *Williamson* and *Alguas* are persuasive. First, identifying the specific examinations allows a trial court to properly determine whether the proposed testing should be ordered. With knowledge of the particular examinations, the trial court may decide to fix limitations, evaluate other testing alternatives, or deny the examinations altogether. Without disclosure, the trial court is deprived of the information it needs to analyze whether such testing is necessary and appropriate in a particular case.

Second, withholding the identity of the examinations deprives the plaintiff of the opportunity to intelligently object to the examinations as burdensome, unfair, harmful, unreliable, or unnecessary. On the other hand, if the specific examinations were revealed by defendants, the plaintiff may in some instances have no objection to the proposed testing, allowing a consent judgment to be reached. Where defendants purposefully keep the proposed examinations secret, however, blanket objections from plaintiffs will be inevitable. Furthermore, as in this case, where the proposed testing is exceptionally lengthy (thirteen (13) hours over two (2) days), and unduly repetitive, Plaintiffs' concerns regarding the appropriateness of the undisclosed testing are further justified.

In fact, Plaintiff in this case has already undergone substantial neuropsychological testing. Ms. Johnson submitted to numerous objective neuropsychological examinations to evaluate her intellectual skills, verbal comprehension, perceptual reasoning, working memory, processing speed, verbal reasoning, immediate auditory memory, vocabulary, visual reasoning, oral arithmetic skills, general fund of knowledge, constructional skills, visual scanning efficiency, psychomotor speed, academic skills, oral language skills, manual motor skills, stimulation responses, amongst other abilities.[27]

Given the substantial neuropsychological testing Ms. Johnson has already undergone, it is essential that Defendants identify the specific neuropsychological examinations to be administered by their neuropsychologist, Dr. Bianchini. Should Dr. Bianchini seek to administer any of the tests Ms. Johnson has already taken, this Court should rightly deny Defendants' request as unduly repetitive and unnecessary. Without disclosing the specific tests, however, Defendants' have deprived this Court of its ability to effectively evaluate Defendants' request for additional and likely duplicative testing. Accordingly, by refusing to identify the specific tests to be administered, Defendants' request should be denied for failure to specify the manner, conditions, and scope of the proposed testing under Rule 35.

### III. CONCLUSION

Plaintiff prays that Defendants' Motion to Compel Ms. Johnson to submit to thirteen (13) hours of repetitive neuropsychological testing over the course of two (2) days be denied. As previously discussed, Defendants failed to establish "good cause" under Article Rule 35 because less burdensome discovery is readily available to Dr. Bianchini upon which he can rely to form an expert opinion in neuropsychology for Defendants. In addition, Defendants also failed to satisfy the "manner, conditions, and scope" of the examination by refusing to disclose the

---

[27] *Id.*

specific tests that their chosen expert, Dr. Bianchini, seeks to administer to Ms. Johnson. As such, Defendants' request under Rule 35 should be denied.

        Respectfully Submitted,

        **THE VOORHIES LAW FIRM**

        /s/ Richard P. Voorhies III
        _____
        **RICHARD P. VOORHIES III, #30782**
        **JAMES F. FLINN, #34287**
        THE VOORHIES LAW FIRM
        1100 Poydras Street, Suite 2810
        New Orleans, LA 70163
        Tel: 504-875-2223
        Fax: 504-875-4882
        Email: Richard@voorhieslaw.com
        James@voorhieslaw.com

        *and*

        **RODERICK ALVENDIA (#25554)**
        ALVENDIA, KELLY, & DEMAREST
        909 Poydras Street, Suite 1625
        New Orleans, LA 70112
        Telephone: (504) 200-0000
        Facsimile: (504) 200-0001
        Email: rico@akdlalaw.com

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the above and foregoing document has been filed electronically and that it is available for viewing and downloading from the ECF system, and that a copy has also been furnished to all counsel of record via electronic delivery, this 1st day of June, 2016

        /s/ Richard P. Voorhies III